Pearson, J.
 

 The lessor was a purchaser at sheriff’s sale under a
 
 fi.fa.
 
 in favor of one Pearsall against the defendant. It was proved that the defendant was living on th© land at the time of the sale, had been living on it for several years before, and was still living on it.
 

 The defendant offered to prove, that his two sisters had the possession, at the time of the service of the notice, they being entitled to a life estate, and that he was living with them merely as their guest, without in fact having the possession, or any title, except the reversion. This evidence was rejected, and the defendant excepts. There is no error.
 
 Thomas
 
 v Orrel, 5 Ire. 569, is directly in point. The defendant and his two sons were living together ; it was held, that “he had no right to assert title for them, or rather to set up their title and their possession with him, to protect himself.”
 

 The action is for two tracts. No. 1, (as it is called in the case,) was the tract on which the defendant lived. No.
 
 2
 
 was situated near No. 1, but did not adjoin it, and was cultivated for turpentine only. The levy endorsed on the
 
 ft.
 
 
 *113
 

 fa.
 
 is in these words:
 
 “
 
 Levied this execution on the lands of Stephen M. Houston, on the east side of North East River, adjoining the lands of Stephen M. Grady, and others, and, after due advertisement, sold the land levied on, &c.”
 

 The defendant’s counsel objected, that the levy was too vague and uncertain in its description to include No.
 
 2.
 
 This question was reserved. The plaintiff called the officer who made the levy, to explain the position of No.
 
 2
 
 in reference to No. 1, to the lands of Grady, and the North East River. This was objected to, but was received; for this the defendant excepts. The Court decided the question reserved for the plaintiff; for this, the defendant excepts. There is no error.
 

 These points were made under a misapprehension of the nature of a sheriff’s levy under
 
 taf.fa.
 
 The defendant’s counsel did not advert to the difference between such a levy which need not be returned, and the levy of a constable which creates a lien, must be returned, and must have a certain degree of particularity, so as to identify the land, and enable the sheriff to know which land to sell under the
 
 venditioni
 
 exponas, and of which notice must be given. None of these things is required in reference to a levy by the sheriff under
 
 af.fa.
 
 It is not easy to perceive why á levy is required when the land is sold under theyi./a.
 

 The defendant insisted that the sheriff’s deed was fraudulent and void, because it included more land, and greater estates than were sold.
 

 One Wallace, a witness for the defendant, swore he was at the sale, and heard the officer proclaim, that he would sell only the tract of land, on which the defendant levied, and that he reserved the life estate of the defendant’s sisters. One Pearsall and the officer swore, that all of the land in dispute was sold, and there was no reservation of a life estate. The Court charged, “ that any combination between the sheriff and the plaintiff, as purchaser, calculated to injure the sale of the property, would avoid the deed — and any such com
 
 *114
 
 bination, to include more land in the deed, than was 'sold, would avoid it. The deed could convey title for no more ■and no other lands than those actually sold.”
 

 The defendant moved for a new trial, because
 
 of misdirection.
 
 There is no misdirection, of which he has a right to complain. The first proposition was uncalled for, because 'there was no evidence of a combination to injure the sale ■of the property. The second, unless qualified by the latter part of the sentence, -is too broad, for although a deed is made ‘to include more land than was sold, it is void only for excess; this however did not prejudice the defendant.
 

 The -only difficulty in law is in consequence of an
 
 omission
 
 to charge in reference to the alleged reservation of a life estate. There is no exception for this omission, and we are therefore obliged to infer, either that the charge was satisfactory on -this question, or that the defendant did'not wish to raise the question before the jury, and did not-object to the omission, being satisfied that the fact was against •him.
 

 We should have no doubt of the correctness of this inference, but for the fact, that the evidence in regard to 'the alleged reservation is stated, which Ivas unnecessary. Such, statements, however, are very common, and we cahhot .permit it to influence our decision. If the reporter did not omit a great deal of surplusage, his books would be quite voluminous. The other two judges prefer to rest the first point, upon the decision in
 
 Thomas
 
 v
 
 Orrel.
 
 It is proper forme to say, in that case'collusion between the father and son is taken for granted, and I acquiesce in the decision upon the assumption, that, after judgment in this case, if the'sisters of the defendant'can satisfy the court by proper affidavit, that they have a
 
 bona fide
 
 claim to a life estate andaré in possession, the court has power to order the writ of possession not to be issued, until the plaintiff brings an ..action of ejectment against them.
 

 
 *115
 
 I think the court has this power,.and put my opinion on the ground, that awarding a writ of possession is no part of,' the original judgment in ejectment,.but is a new incident,, superadded by the court in order to do complete justice,.and is therefore under its control, so that, although an execution, for the damage and costs- necessarily follows the judgments,, being what is demanded by the- writ and declaration, yet the writ of possession may be refused, if this “ creature of the Court” is likely to be made an instrument of injustice.”’ 3 Blackstone Com. 199.
 

 If the Court has not this power, I should question the. decision in
 
 Thomas
 
 v
 
 Orrel,
 
 that the plaintiff in ejectment entitles himself to judgment, by showing that the-defendant was “an occupant of the premises,” if it was proven, that he was living then, as the guest or servant of the real owner; for when two are living in the same house, the law adjudges the possession to be in the one who has title;
 
 Gwyn
 
 v
 
 Stokes,
 
 2 Hawks, 235. Under the writ of possession, it is the duty of the sheriff to put the defendant and
 
 all other -persons off of the land,
 
 and if the writ issues in this case, the sisters of the defendant will, by process of the law, be turned out of “house and home,” without an opportunity of being' heard. It is true, they may, by an action of ejectment, regain the possession, but that cannot compensate for the inconvenience and injury resulting from the loss of it. Suppose this case in trespass against the sheriff, they can recover damages for the eviction, (which I deny, for he does only that which the writ commands him to do •) this will be but a poor consolation for the injustice inflicted on them, by the order of the Court, to which they are obliged to submit. I cannot bring my mind to the conviction, that such oppression can be a legitimate consequence of the formal action of ejectment, which, it is said, is “ so moulded and fashioned by the Courts, as to do complete justice in every case.” In
 
 Bledsoe
 
 v Smith, 2 Dev. 314, it is held, that a judgment against the casual ejector
 
 *116
 
 will be set aside, and if a writ of possession has been executed, a writ of restitution will be issued when it is proven that the notice has not been served, and, of course, the same will be done, when it has been served on one who is
 
 not the person in possession.
 
 It is a settled rule in this State, not to enter judgment against the casual ejector, unless it be proven, that the person on whom the notice was served is the person in possession. In the above case, the Court remarks,
 
 “
 
 If the writ of
 
 habere facias possessionem
 
 is issued) every person in possession claiming title to the land, who. might have a good title to it, would be turned out of possession. This would be iniquitous and oppressive, and a gross violation of the principle, that no man shall be deprived of his property, without a hearing — since it is in order that the fictions in this action shall do no wrong, that the Courts will not permit judgment to be entered against the easual ejector, unless it is made to appear that notice has been given to the tenant in possession. The affidavit should be positive, that the person on whom the notice has been served, was the
 
 tenant
 
 in possession or acknowledged himself to be so. This rule was adopted to protect
 
 third persons,
 
 and if, by any means, a judgment by default is entered and a third person is turned out of possession, upon its being made to appear that the person served with notice was not the person in possession, the Court will order a writ of restitution, to prevent the rule from being evaded. The right to order restitution necessarily implies the right to prevent the recovery in the first instance — and the person in possession is permitted to object, to the judgment against the casual ejector, and to prove error contrary to the admission of the person served with notice, that he is not the person in possession.
 

 Our question is a new application of the same rule to a different state of facts. Suppose the person served with notice admits himself to be in possession, and defends the action, and judgment is given against him. Are the rights of a
 
 *117
 
 third person to be affected by that circumstance? and does he thereby lose the protection of the rule? If so, on what ground? It is said, “why did he defend?” and collusion will be implied from the fact of his doing so. It seems to me, this is a
 
 non seqnitur.
 
 The person in possession is not presumed to have control over his actions, and the right to say,
 
 “
 
 you must not defend, for I will thereby be precluded from showing my title, and that I am the person in possession.”
 

 So far from furnishing an inference of collusion, it seems to me the inference is the other way, that the plaintiff is attempting a fraud on the Court. For instance, in this case, the sisters of the defendant could not prevent his making defence, whereas the plaintiff had control over the process, and might have had the notice served on them, so as to allow them to be made defendants, and, by ml doing so, he gives an indication, that he preferred contending with one
 
 “ whose hands are
 
 tied,” rather than with those who are at liberty, and can make full defence. At all events, if there be a presumption of collusion, it cannot be conclusive so as to exclude the sisters of the defendant from showing, after the judgment against him, that they have a
 
 bona fide
 
 claim, are in possession, and that he was living with them as their guest or servant, and consequently that a writ of possession ought not to be issued, by which they would be turned out, without haying had an opportunity to prove their title. If this be not so, the result of our cases is, that if my land is sold, tinder an execution against my overseer, and he defends an action of ejectment, I will be turned out of possession, with the consoling assurance, that I may bring ejectment, and regain it. Unless the Court can protect third persons in the way pointed out, this strange corollary necessarily follows, from the nature of the action of ejectment, and the doctrine, that the purchaser at Sheriff’s sale, as against the defendant in the execution, is entitled to judgment
 
 *118
 
 by showing an execution, a sale, a Sheriffs deed, and that the defendant was
 
 lining on the land.
 

 Per Curiam. Judgment affirmed»